# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| BUZZMARKETING, LLC | : | |
| | : | |
| vs. | : | NO. 03-4392 |
| | : | |
| THE UPPER DECK COMPANY, LLC | : | |

_____

# **O R D E R**

AND NOW, this            day of                                    , 2004, upon consideration of defendant, The Upper Deck Company, LLC, Motion for Summary Judgment, and plaintiff's response thereto, it is hereby

**ORDERED, ADJUSTED AND DECREED**

that defendant's Motion is **DENIED**.

BY THE COURT:

_____
BERLE M. SCHILLER, J.

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| BUZZMARKETING, LLC | : | |
| | : | |
| vs. | : | NO. 03-4392 |
| | : | |
| THE UPPER DECK COMPANY, LLC | : | |

_____

**PLAINTIFF'S ANSWER TO DEFENDANT'S, THE UPPER DECK COMPANY, LLC, MOTION FOR SUMMARY JUDGMENT**

Plaintiff, by and through his undersigned attorney, hereby answers defendant's Motion and, in support thereof, hereby incorporates by reference plaintiff's Affidavit and his Memorandum of Law Contra Defendant's Motion for Summary Judgment, as fully as though set forth at length herein.

WHEREFORE, plaintiff respectfully requests this Honorable Court to deny defendant's Motion for Summary Judgment.

                Respectfully submitted,

                JOHN CHURCHMAN SMITH & ASSOCIATES, P.C.


                BY: _____
                      KATHLEEN K. BARKSDALE, ESQUIRE
                      Attorney for Plaintiff
                      Attorney I.D. No. 30620
                      Validation of Signature Code KKB2084
                      117-119 North Olive Street
                      Media, Pennsylvania 19063
                      (610) 565-3900

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

_____

BUZZMARKETING, LLC            :
                              :
            vs.               :       NO. 03-4392
                              :
THE UPPER DECK COMPANY, LLC   :
_____

**PLAINTIFF'S MEMORANDUM OF LAW**
**CONTRA DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Buzzmarketing, LLC, (Buzzmarketing), by and through its attorney, Kathleen K. Barksdale, Esquire, hereby submits this Memorandum of Law Contra Defendant's Motion for Summary Judgment or in the alternative, partial summary judgment. For all the reasons hereinafter set forth, defendant's Motion should be denied.

**I.      Statement of Issues**

Defendant should be denied summary judgment, or in the alternative, partial summary judgment, for the following reasons:

1.      A valid oral contract existed between the parties, for a specific task, with a specific value, confirmed by the defendant.

2.      There exists evidence of conduct, including voice messages from the defendant evidencing mutual consent to a valid, enforceable, implied-in-fact contract.

**II.     Statement of Facts**

Plaintiff, Buzzmarketing, LLC ("Buzzmarketing"), is an advertising, marketing firm organized pursuant to the laws of the Commonwealth of Pennsylvania (Comp. Para. 1). Plaintiff commenced their action to recover monies owed by defendant, The Upper Deck Company, LLC ("Upper Deck") pursuant to an oral contract. (Comp. Para. 13, 14, 15, 16, 20, 21, 22, 27).

Plaintiff asserts in it's Complaint claims for breach of oral contract as well as implied-in-fact contract (Com. Para. 24, 25, 27 and 27).

      A.     The Upper Deck Company, LLC enters into contract with Buzzmarketing, LLC.

Buzzmarketing prepared a number of proposals for Upper deck at the request of Upper Deck for the purpose of marketing a new toy product being produced by Upper Deck called "Brea Kay". The final proposal in the amount of Two Hundred Thirty Thousand ($230,000.00) Dollars was submitted and accepted by Upper Deck in May 2003. Richard Henry, Senior Vice President for defendant, Upper Deck, had a conversation with Buzzmarketing Chief Executive Officer, Mark Hughes, at which time he formalized the terms of the oral agreement, and advised that Upper Deck would wire the sum of One Hundred Twenty-Two Thousand Five Hundred ($122,500.00) Dollars to Buzzmarketing so that work on the project could go forward (Declaration of Mark Hughes, Chief Executive Officer of Buzzmarketing, attached as Exhibit "C").

On May 15, 2003, Mark Hughes, Chief Executive Officer of Buzzmarketing, LLC received an e-mail from Richard Henry, Senior Vice President for defendant, Upper Deck, at which time, Mr. Henry confirmed that he would have someone work on the wire transfer of the funds from Upper Deck to Buzzmarketing pursuant to the terms of the oral agreement (Buzzmarketing Deposition Exhibit No. 8). On May 16, 2003, a Billboard Magazine article appeared and was confirmed by Don Williams, public relations spokesman for Upper Deck, confirmed that Upper Deck had entered into

a deal to sponsor the United States and European tours for a pop group in exchange for a song introducing their new game product (Buzzmarketing Deposition Exhibit 10). The use of the pop singing group, as well as the song, were part of the final proposal accepted by Upper Deck (Buzzmarketing Deposition, Exhibit 8).

Subsequent to the publication of the article, a representative from Upper Deck, Louise Curcio, director of marketing, called and left a message for an association of Buzzmarketing requesting that the article be corrected to reflect the fact that the agreement was only for the United States marketing of the product and not the marketing of the product in Europe. (Buzzmarketing Deposition N.T. 119-120).

On or about May 15, 2003, Richard Henry, Senior Vice President of Buzzmarketing, set a e-mail to Louise Curcio, director of marketing for the defendant, indicating that the terms of payment had already been worked out with Buzzmarketing and directing her to move forward with payment. (Exhibit 11, Buzzmarketing Deposition, 126:122-126; Hughes Declaration 94).

On or about May 30, 2003, Kristy Watson, marketing manager for defendant, Upper Deck, left a voice message for Mark Hughes, Chief Executive Officer of Buzzmarketing, advising that she would call when the wire of $122,500.00 was going to be sent. (Buzzmarketing Deposition 131). On May 30, 2003 at approximately 7:55 p.m., EDT, Louise Curcio, director of marketing, left a voice mail message for Mark Hughes, Chief Executive officer of Buzzmarketing, advising him that everything was okay and he (Hughes) should be receiving the wire on Monday or Tuesday of the following week (Buzzmarketing Deposition 169-170).

During the month of May, the director at Upper Deck, were aware that an oral contract had been entered into between the parties and that plaintiff, Buzzmarketing, was moving forward with the implementation of the advertising campaign.

On June 11, 2003, Richard Henry, Senior Vice President of Upper Deck placed a call to Mark Hughes, Chief Executive Officer of Buzzmarketing advising that Upper Deck did not want to proceed with the song. Mr. Henry acknowledged Upper Deck's commitment to Buzzmarketing and requested that Mr. Hughes supply a list of expenses and costs for reimbursement (Buzzmarketing deposition Exhibit 18 and 19).

At every turn, Upper Deck, by its own ends and behavior confirmed the existence of an agreement between the parties. Upper Deck's representatives continued to reassure Buzzmarketing that the agreed upon monies were being sent, even to the point of calling him at home on a Friday evening.

When Upper Deck advised that there would be a delay in the project and requested a list of hours and costs for reimbursement, Buzzmarketing complied with the request and at no time to Upper Deck advised anyone from Buzzmarketing that they were mistaken.

### III. <u>Applicable Law</u>

    A.    Summary Judgment

Upon a motion for summary judgment, this Honorable Court must view the facts of the case and the inferences to be drawn from them "in the light most favorable" to the non-moving party. The Court should only then grant the motion of the pleadings and discovery taken as a whole "show that there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as

a matter of law." Fed. R.C.P. 56.  Moreover, as the Third Circuit Court has stated, summary judgment is "a drastic remedy", Tomalewski v. State Farm Life Insurance Co., 494 F.2d 882, 884 (3rd Cir. 1974), and "Courts are to resolve any doubt as to the existence of genuine issues of fact against the moving party". Ness v. Marshall. 660 F.2d 517 at 519 (3rd Cir. 1981).

It is well settled that motions for summary judgment are not vehicles for resolving factual disputes. *10 Charles A. Wright, Arthur R. Miller and Mary K. Kane, Federal Practice and Procedure: Civil, § 2712, at 574 (2d ed. 1983).*  The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe.  The court has one task and one task only, to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 s. Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *10 Wright, Miller & Kane § 2712,* at 574-78.

The non-movant need not tender evidence in a form that would be admissible at trial; he may rely on affidavits or any other materials of the kind identified in Rule 56(c). Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  Further inferences should be drawn in a light most favorable to the non-moving party. Big Apple BMW v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, ___ U.S. ___, 113 S. Ct. 1262, 122 L.Ed.2d 659 (1993); Pastore v. Bell Telephone Co. of Pennsylvania, 24 F.2d 508, 512 (1994).

    B.    Pennsylvania Law is Controlling

Sitting in diversity, this Honorable Court must apply the choice of law principles of the forum state, Pennsylvania. Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487 (1941); CBS, Inc. v. Film Corp. of America, 545 F.Supp. 1382 (E.D. Pa. 1982).

**IV.     There Is Clear and Convincing Evidence That the Parties Entered into an Oral Contract in May 2003**.

A verbal agreement differs from a written one in that when construing a written contract, all negotiations leading up to the contract are presumed to be merged in the writing. Oral testimony is not admissible to explain the written document in the absence of ambiguity requiring an explanation. McCormick v. Jermyn, 351 Pa. 161, 166, 40 A.2d 477, 480 (1945). However, when determining the existence of an oral contract, the work constituting the agreement are only parts of and imbedded in a general conversation, and the meaning must be interpreted with reference to the circumstances under which the parties contracted in light of the objectives to be accomplished. Id. In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to surrounding circumstances and course of dealing between the parties in order to ascertain their intent. Westinghouse Electric Co. v. Murphy, Inc., 425 Pa. 166, 171, 228 A.2d 656, 659 (1967); see also, Silverstein v. Hornick, 376, Pa. 536, 103 A.2d 734 (1954).

In this case, the parties settled on an agreement for the sum of $230,000.00 to conduct a marketing/advertising campaign. It is clear that the parties intended to be bound by the terms of that agreement and constantly advised plaintiff that the money would be wired, which is a common practice in the advertising industry.

In the advertising industry, parties usually commence their association with a oral contract, the terms of which may later be reduced to writing.

Parties often enter into oral contracts with the understanding that a written contract will follow that merely memorializes the contract. It is well settled under our cases that if no written

agreement is forthcoming, the oral agreement still governs. Singer Co., Librascope Div. v. United States, 568 F.2d 695 (Ct. CL 1977).

### V.     There is Clear and Convincing Evidence With an Implied-In-Fact Contract

The material assent of parties may be specifically expressed in writing or orally or may be inferred from the actions with the parties in light of the surrounding circumstances. Martin v. Little Brown and Co., 304 Pa. Super. 424, 429, 450 A.2d 984 (1981). When the parties' intentions are so inferred, a contract is said to be "implied in fact". Id.

It is clear from the course with dealing that the parties intended a contract to be in effect. There were press releases acknowledging its existence, there were discussion sand e-mails confirming the payment. Finally, there was an acknowledgment of the obligation and the debt when the request was made to supply an itemized bill of times and expenses.

The Court in this instant case that there was an implied agreement. In the case of Riese v. QVC, Inc., 1999 U.S. Dist. Lexis 3476 (E.D. Pa. 1999), the court determined that the defendant was not entitled to a summary judgment in a circumstance where the plaintiff outlined a release for television program for broadcast on QVC. The letter explained that the plaintiff expected to receive employment and even money as a producer of the show. Plaintiff then had a meeting with QVC representatives. The court determined that a jury could find that plaintiff's disclosure of his idea was the performance of a service for benefit of QVC, performed with the knowledge and benefit of QVC. A jury could also find that the service was useful and plaintiff would receive compensation and QVC availed itself of that service without producing compensation. The court denied defendant's motion for summary judgment in plaintiff's implied contract claim.

Intention to make a promise may be manifested in language or by implication from other circumstances, including cause of dealing or usage with breach or course of performance. *Restatement of Contracts (Second) 1 § 4, Comment a.* <u>Crawford's Auto Center, Inc. v. Commonwealth of Pennsylvania 655 A.2d 1065, 1066-67 (Pa. Comm. Ct. 1985)</u>.

### V. <u>Conclusion</u>

There is currently a question of material fact for a jury to consider in the case. Defendant, accepting plaintiff's proposal and publicly acknowledged an obligation to the plaintiff.

Therefore, defendant's Motion for Summary Judgment must be denied.

                                  JOHN CHURCHMAN SMITH & ASSOCIATES, P.C.

BY: _____
      KATHLEEN K. BARKSDALE, ESQUIRE
      Attorney for Plaintiff
      Attorney I.D. No. 30620
      Validation of Signature Code KKB2084
      117-119 North Olive Street
      Media, Pennsylvania 19063
      (610) 565-3900

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA
_____

BUZZMARKETING, LLC           :
                             :
            vs.              :     NO. 03-4392
                             :
THE UPPER DECK COMPANY, LLC  :
_____

### DECLARATION OF KATHLEEN K. BARKSDALE
### IN SUPPORT OF PLAINTIFF'S RESPONSE TO
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I, Kathleen K. Barksdale, Esquire, declare as follows:

1. I am counsel for plaintiff, Buzzmarketing, LLC.

2. Attached as Exhibit "A" is a true and correct copy of plaintiff's Complaint.

3. Attached as Exhibit "B" is a true and correct copy of excerpted portions of the transcript of the deposition of plaintiff, Buzzmarketing, LLC by its designee, Mark Hughes, and selected exhibits thereto. The following deposition exhibits are attached:

    a. Exhibit 7;

    b. Exhibit 8;

    c. Exhibit 10;

    d. Exhibit 11;

    e. Exhibit 18;

    f. Exhibit 19

4. Attached as Exhibit "C" is a true and correct of the Declaration of Mark Hughes in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment.

I declare under penalty of perjury that the foregoing is true and correct.

Executed April        , 2004.

                                                    _____
                                                   KATHLEEN K. BARKSDALE, ESQUIRE
                                                   Attorney for Plaintiff, Buzzmarketing, LLC

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA
_____

BUZZMARKETING, LLC          :
                            :
        vs.                 :       NO. 03-4392
                            :
THE UPPER DECK COMPANY, LLC :
_____

**DECLARATION OF MARK HUGHES, CHIEF EXECUTIVE OFFICER
OF BUZZMARKETING, LLC IN SUPPORT OF PLAINTIFF'S RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, Mark Hughes, declare as follows:

1. I am the Chief Executive Officer of Buzzmarketing, LLC. I oversee all of the operations of Buzzmarketing. This declaration is based on my personal knowledge, and is submitted in support of Buzzmarketing's Response to Defendant's Motion for Summary Judgment.

2. It is a common course of business that parties commence a relationship by entering into an oral contract that may be later memorialized in the writing.

3. I met on two occasions with representatives of The Upper Deck, LLC in New York and California. At their request, I submitted several proposals to conduct an advertising campaign for a new product.

4. On May 14, 2003, I was advised by Richard Henry, Senior Vice President of Sales for The Upper Deck, LLC that our (Buzzmarketing) proposal in the amount of $230,000 was accepted.

5. Following my discussion with Mr. Henry, I had discussions with Louise Curcio, Director of Marketing for The Upper Deck, LLC confirming the payment schedule and the fact that the funds would be wired to Buzzmarketing's account.

6. Buzzmarketing preceded to engage the services of a songwriting and singing group to implement the advertising campaign.

7. A story was released to Billboard Magazine, and confirmed by Don Williams, public relations spokesman for Upper Deck on May 16, 2003 that a deal had been signed to market this new toy in the united States and Europe.

8. A voice mail was left for me on May 30, 2003 by Kristy Watson, Marketing Manager for Upper Deck advising that she was working on the wire of funds to Buzzmarketing.

9. A voicemail was left for me on Friday, May 30, 2003 by Louise Curcio, Director Marketing for Upper Deck indicating that I should receive the wire on the following Monday or Tuesday.

10. On June 11, 2003, Richard Henry, Senior Vice President for Upper Deck called to advise that they would not be using the song, he acknowledged Upper Deck's obligation to Buzzmarketing and he requested a list of hours and costs for purposes of reimbursing Buzzmarketing.

I declare under penalty of perjury that the foregoing is true and corrected.

Executed on April 5, 2004 in Media, Pennsylvania.

_____
MARK HUGHES, Chief Executive Officer
Buzzmarketing, LLC

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| BUZZMARKETING, LLC | : | |
| | : | |
| vs. | : | NO. 03-4392 |
| | : | |
| THE UPPER DECK COMPANY, LLC | : | |

_____

## CERTIFICATE OF SERVICE

      KATHLEEN K. BARKSDALE, ESQUIRE, attorney for plaintiff, Buzzmarketing, LLC, hereby certifies that a copy of Plaintiff's Answer to Defendant's, The Upper Deck, LLC, Motion for Summary Judgment was served upon

Samuel E. Cohen, Esquire
Marshall Dennehey Warner Coleman & Goggin
1845 Walnut Street
Philadelphia, PA 19103-4797
by United States First Class Mail and

The Honorable Berle M. Schilller
U.S.D.C. for the Eastern District of Pennsylvania
U.S. Courthouse, Room 5614
601 Market street
Philadelphia, PA 19106-1797
by Hand Delivery

                                                    JOHN CHURCHMAN SMITH & ASSOCIATES, P.C.

Date:  _____      BY:  _____
                                                                     KATHLEEN K. BARKSDALE, ESQUIRE
                                                                     Attorney for Plaintiff, Buzzmarketing, LLC