**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BUZZMARKETING, LLC, | Civil Action No. 03-4392 |
| Plaintiff, | |
| v. | |
| THE UPPER DECK COMPANY, LLC, | |
| Defendant. | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT**

Defendant, The Upper Deck Company, LLC ("Upper Deck"), by and through its

attorneys, Marshall, Dennehey, Warner, Coleman & Goggin, and Markun Zusman &

Compton, LLP, hereby submits this Reply To Plaintiff's Opposition To Motion For

Summary Judgment or In The Alternative Partial Summary Judgment.  As set forth fully

below, the Plaintiff has failed to proffer any evidence establishing genuine issues of

disputed fact as to any of its claims.  In fact, the Plaintiff's Opposition attempts to create

issues of disputed fact only as to two of the four claims, and abandons the written

contract and unjust enrichment/quantum meruit claims.  Therefore, at minimum, partial

summary judgment may be granted as to those two claims.  Further, as set forth below,

Plaintiff's attempt to create factual issues as to the two remaining claims also fails.  For

these reasons and those set forth in the Motion For Summary Judgment, Upper Deck

respectfully requests that this Honorable Court grant its motion in its entirety.

1

I.      **Plaintiff Does Not Even Attempt To Oppose Summary Judgment On Its Written Contract and Unjust Enrichment/Quantum Meruit Claims**

Although Upper Deck's instant motion seeks summary judgment as to each of the complaint's four claims, Plaintiff's opposition addresses only the second and third claims, for breaches of oral and implied-in-fact contract, respectively. (Pl. Opp. 6-8; Compl. ¶¶ 20-27.) Plaintiff's opposition brief does not even mention the first and fourth claims for breach of written contract and unjust enrichment/quantum meruit, respectively. (Compl. ¶¶ 17-19, 28-32.) Therefore, should the Court determine that Upper Deck has met its initial burden as the summary judgment movant, the motion should be granted as to the breach of written contract and unjust enrichment/quantum meruit claims. As demonstrated in Upper Deck's motion for summary judgment, there is not and never was a written agreement and there is no evidence that Upper Deck was unjustly enriched by its brief and inconclusive encounter with Buzzmarketing. Summary judgment at least as to these two claims is therefore appropriate. Fed. R. Civ. Proc. 56(e).

II.     **There Is No Genuine Issue Of Material Fact As To The Oral Contract Claim**

Plaintiff, in its opposition, seeks to avoid summary judgment of the oral contract claim by offering the general assertion:

> In this case, the parties settled on an agreement for the sum of $230,000.00 to conduct a marketing/advertising campaign. It is clear that the parties intended to be bound by the terms of that agreement and constantly advised plaintiff that the money would be wired, which is a common practice in the advertising industry.
> In the advertising industry, parties usually commence their association with a[n] oral contract, the terms of which may later be reduced to writing.

(Pl. Opp. 6.)

Gleaning from the recitation of facts in Plaintiff's opposition brief and the evidence that it submits along with its opposition, the alleged oral contract arises from "a conversation with Buzzmarketing Chief Executive Officer, Mark Hughes, at which time [Upper Deck] formalized the terms of the oral agreement . . . ." (Pl's Opp. 2.)  The declaration of Mr. Hughes, which is the only evidence that Plaintiff cites in support of this "agreement," confirms that the conversation with Mr. Henry, which took place on May 14, 2003, dealt with Buzzmarketing's final marketing proposal ("Final Proposal"), which had a budget of $230,000.  (Hughes Decl. ¶4.)  There is no dispute, however, that the Final Proposal does not contain material terms governing the parties' proposed relationship.  Indeed, Plaintiff alleges in its verified complaint that "Senior Vice President Rich Henry acting on behalf of Upper Deck, accepted the quote for services to be performed by Buzzmarketing, in the amount of Two Hundred Thirty Thousand Dollars ($230,000)."  (Compl. ¶ 6) (emphasis added).

Plaintiff's conclusory statement in its opposition brief that "the parties settled on an agreement for the sum of $230,000.00 to conduct a marketing/advertising campaign," does not alter the undisputed fact that the terms of the draft services agreement (of which the Final Proposal was merely an appendix) was not finalized at the time of the May 14, 2003, conversation, or that each draft services agreement reflected an intent not to be bound until a written contract was executed.  The terms of the draft services agreement changed over the course of continued negotiations and through several iterations of drafts of the service agreement, which happened over the approximately three weeks following the May 14, 2003 conversation.  (Mot. Summ. Judg. 6-7, 10-12.)  Indeed, Buzzmarketing

proposed modifications to the draft services agreement on June 3, 2003.  (Mot. Summ. Judg. 6) (citing Ex. 16; Buzz Dep. 136:16-137:19.)

In light of the numerous contractual terms that were being negotiated, it cannot be said that Upper Deck's oral "acceptance" of the marketing services outlined in the Final Proposal could form the basis for a contractual relationship.  The parties could not have orally agreed to the terms of a binding contract on May 14, 2003, when the evidence shows ongoing negotiations, taking place over the weeks following that conversation, to determine substantive terms of the parties' potential contractual relationship.  Also, the evidence indisputably shows that the series of changing proposals that took place before May 14 was anything other than a course of negotiations.  Thus, even looking to the "surrounding circumstances and the course of dealings between the parties," as Plaintiff suggests, Westinghouse Elec. Co. v. Murphy, Inc., 228 A.2d 656, 659 (Pa. 1967) (citing Silverstein v. Hornick, 103 A.2d 734 (Pa. 1954)), the undisputed evidence shows only a prolonged period of negotiations of which the May 14 conversation was only a part.  These facts do not evidence an oral contract.  See Essner, 143 A.2d at 366-67.

Further, it is undisputed that one contractual term that remained constant throughout the drafting process (including the draft that Buzzmarketing sent to Upper Deck on May 14, 2003, the same day that Plaintiff contends an oral contract was formed) was a provision stating that: (1) the written agreement was the entire and sole agreement between the parties, (2) the written agreement "supersedes all prior agreement, understandings, oral or written, expressed or implied," and (3) there were no contemporaneous oral agreements between the parties.  (Mot. Summ. Judg. 15) (citing Ex. 7, at p. 8; Ex. 15, at p. 9; Ex. 17; Ex. 23, at p. 17.)  In the face of this undisputed evidence

4

of intent not to be bound absent an executed, written contract, the oral contract claim fails

as a matter of law.  See University Graphics, Inc. v. Pro-Image Corp., 913 F. Supp. 338,

342-43 (M.D. Pa. 1996); Essner v. Shoemaker, 143 A.2d 364, 366-67 (Pa. 1958).

Further, there is no factual dispute as to what the terms of the Final Proposal were.

The Final Proposal, which Buzzmarketing identifies as a "quote for services," (Compl.

¶6), was reduced to writing as of May 14, 2003.  (Ex. 7.)  There is no factual dispute as to

the existence, or the terms of the Final Proposal.  Nor is there any dispute that the parties

were negotiating the terms of a proposed agreement into early June, after the date that

Plaintiff alleges that an oral contract was formed, or that no written contract exists.  The

cases on which Plaintiff relies therefore do not support its opposition.  See Westinghouse,

228 A.2d at 657 (interpreting parties' course of dealings with respect to work actually

performed under written contract); Silverstein, 103 A.2d at 735-36, 737 (enforcing, in

action brought in equity, law firm's oral contingency fee agreement where oral agreement

was confirmed in letter, and clients had sought out and accepted benefits of law firm's

services); McCormack v. Jermyn, 40 A.2d 477, 480 (Pa. 1945) (finding factual issue

where meaning that parties attributed to terms in alleged oral contract was at issue).  Nor

does the Court of Claims opinion that Plaintiff cites provide any guidance.  The Singer

Co., Librascope Div. v. United States, 568 F.2d 695, 698, 703 (Cl. Ct. 1977) (finding

existence of informal agreement, where there was written report confirming terms of

informal agreement, and where parties had prior course of dealing pursuant to written

contract).

The only other "evidence" that Buzzmarketing submits is Mr. Hughes's

declaration stating that "[i]t is a common course of business that parties commence a

relationship by entering into an oral contract that may be later memorialized in the

writing." (Hughes Decl. ¶2.) This statement is unavailing. The general statement as to

"course of business" is irrelevant to the parties' course of negotiations. It does not

contradict documentary evidence of the parties' continuing negotiations from mid-May to

early June 2003, which establishes that no contract existed as of May 14, 2003, nor does

the cursory "course of business" averment create a dispute as to Upper Deck's intent not

to be bound until a written contract was fully executed. See Smith v. Penbridge Assocs.,

Inc., 655 A.2d 1015, 1019 (Pa. Super. Ct. 1995) (holding that "express terms of [an]

agreement [are] not trumped by any evidence of industry custom or usage of trade.").[1]

## III.     There Is No Genuine Issue Of Material Fact As To The Implied-In-Fact Contract Claim

None of the evidence that Plaintiff submitted with its opposition brief shows any

material factual dispute as to the implied-in-fact contract claim. In opposing summary

judgment as to the implied-in-fact contract, Plaintiff offers the conclusory, unsupported

statement: "It is clear from the course with dealing that the parties intended a contract to

be in effect. There were press releases acknowledging its existence, there were

discussion[s and] e-mails confirming the payment. Finally, there was an

acknowledgment of the obligation and the debt when the request was made to supply an

itemized bill of times and expenses." (Pl.'s Opp. 7.) Neither these unsupported

---

[1] In addition, this statement is inadmissible. Testimony as to the practice in a particular field or industry, to the extent it relies on "specialized knowledge," is a matter of expert testimony. See Fed. R. Evid. 702; see also United States v. Benson, 487 F.2d 978, 983 (3d Cir. 1973) (affirming trial court's admitting of expert testimony on custom of securities industry). Pursuant to the Court's scheduling order, Plaintiff was to have made expert witness disclosures by February 13, 2004. Having made no such disclosures, Plaintiff should not be permitted to offer any expert evidence. Moreover, Plaintiff has made none of the threshold showings required to qualify its CEO as an expert. Indeed, it makes none of the required showing of reliability. See Fed. R. Evid. 702.

allegations nor any evidence that Plaintiff cites sets forth specific facts showing that there

is a genuine issue for trial.

These proffered assertions cannot give rise to an implied-in-fact contract.  The

following elements must be shown to establish an implied-in-fact contract:

> (1)     that services were performed under such circumstances as to give
> the recipient reason to understand
> > (a)     that the services were performed for him and not for
> > someone else, and
> > (b)     that the services were not rendered gratuitously, but with
> > the expectation of compensation; and
> (2)     that the services were beneficial to the recipient.

In re Mailers Unlimited, Inc., 6 B.R. 238, 240 (Bankr. E.D. Pa. 1980) (citing

Bloomgarden v. Coyer, 479 F.2d 201, 208 (D.C. Cir. 1973); United States v.

Consolidated Edison Co., 452 F. Supp. 638, 654 (S.D.N.Y. 1977)).

One of Plaintiff's own authorities confirms this point:

> "A promise to pay for services can, however, only be implied when they
> are rendered in such circumstances as authorized the party performing to
> entertain a reasonable expectation of their payment by the party benefited.
> The service or other benefit must not be given as a gratuity or without
> expectation of payment, and the person benefited must do something from
> which his promise to pay may be fairly inferred."

Martin v. Little, Brown & Co., 450 A.2d 984, 987 (Pa. Super. 1981) (quoting Home

Protection Building & Loan Association Case, 17 A.2d 755, 756-57 (Pa. Super. 1941).

The undisputed facts are that the parties' negotiations involved no conduct that fits within

the parameters set forth above.

First, the undisputed evidence shows that Plaintiff did not provide marketing

services to Upper Deck at all.  The evidence is undisputed that the parties contemplated

an arrangement whereby Upper Deck would, upon execution of a written contract, make

an advance payment to Buzzmarketing, and only after payment was received would

Buzzmarketing begin rendering the marketing services outlined in its Final Proposal.

(Henry Decl. ¶¶ 2, 6.)  The evidence shows that Buzzmarketing was waiting for Upper

Deck to make a payment before proceeding with any marketing work.  (Buzz Dep.

126:20-127:4; 128:1-21.)[2]  Moreover, it is undisputed that Upper Deck derived no benefit

from any of Buzzmarketing's proposals.  (Mot. Summ. Judg. 18-19.)  Therefore

Buzzmarketing did not perform any services with the expectation that Upper Deck would

pay for them, nor did Upper Deck enjoy any benefit.  Just as with Plaintiff's unjust

enrichment/quantum meruit claim, the implied-in-fact claim fails as a matter of law.

        Plaintiff's proffered evidence does not refute the above facts.  First, the general

reference to "press releases" in the opposition brief apparently refers to a single Billboard

magazine article.  (Pl.'s Opp. 3; Ex. 10.)[3]  Plaintiff asserts that the "story was released to

Billboard Magazine, and confirmed by Don Williams, public relations spokesman for

Upper Deck on May 16, 2003 that a deal had been signed to market this new toy in the

[U]nited States and Europe."  (Hughes Decl. ¶ 7.)  All evidence relating to the Billboard

magazine article is inadmissible hearsay and should be disregarded.  First, in

Buzzmarketing's deposition, Mr. Hughes testified: "May 16th is the date that Jeff

Greenfield had the conversation with Don Williams.  And it was on the same day after

the Don Williams conversation that Louise Curcio left a voicemail for Jeff Greenfield.

Subsequently, Jeff Greenfield told me about the voicemail, I believe, over the phone."

(Buzz Dep. 119:7-14.)  Any testimony by Mr. Hughes as to the Billboard article or its

supposed confirmation by Upper Deck is inadmissible double hearsay.  See Mountbatten

Surety Co., Inc. v. Fidelity & Deposit Co. of Maryland, No. 99-2687, 2000 WL 375259,

---

[2]  Attached as Exhibit A to Eng Decl. Supp. Mot. Summ. Judg.
[3]  Attached as Exhibit B to Barksdale Declaration.

at *13 & n.71 (E.D. Pa. Apr. 11, 2000).  The Billboard article itself, reads in relevant part:

"In a deal signed this month, trading card company the Upper Deck agreed to sponsor

European and U.S. tours for an Orlando, Fla., pop group in exchange for a song about a

new game it is introducing later this year, says Greenfield, who helped negotiate the

terms."  (Ex. 10.)  On its face, this article suffers from the same hearsay deficiencies as

Mr. Hughes's testimony.  See Mountbatten, 2000 WL 375259, at *13 & n.71.  In addition

to the evidentiary deficiencies of both the article and testimony pertaining to it, this

"evidence" does not show that Buzzmarketing rendered any services or conferred any

benefit on Upper Deck, and does not support an implied-in-fact contract.

Buzzmarketing next cites "evidence" concerning Upper Deck's representations

that it was working on effecting a wire transfer.  (Exs. 8, 11; Hughes Decl. ¶¶ 4, 5, 8, 9.)

Even accepting the accuracy of these statements, they do not refute the fact that

Buzzmarketing rendered no services to Upper Deck, and that Upper Deck derived no

benefit from Buzzmarketing.  This proffered evidence is irrelevant to Buzzmarketing's

implied-in-fact contract claim.

Finally, Plaintiff alleges "there was an acknowledgment of the obligation and the

debt when the request was made to supply an itemized bill of times and expenses."  (Pl.'s

Opp. 7.)  Deposition Exhibits 18 and 19 are invoices, purportedly prepared by

Buzzmarketing at Upper Deck's request.  Mr. Hughes states in his declaration that Upper

Deck, on June 11, 2003, "called to advise that they would not be using the song . . . ."

(Hughes Decl. ¶10.)  This notice effected a rejection of the then current proposal.  The

request for invoices came after that rejection, and is irrelevant for purposes of

establishing an implied-in-fact contract.  Whether conduct gives rise to an implied-in-fact

contract is determined by viewing the circumstances under which the conduct took place, not future conduct.  See In re Mailers Unlimited, Inc., 6 B.R. at 240; Martin, 450 A.2d at 987.  Also, Upper Deck never paid those invoices, and there is no evidence that the parties ever reached an agreement as to the amounts referenced on those invoices, or that Upper Deck otherwise approved of those figures.  Moreover, the entries referenced on that document pertain to preparatory activities that Buzzmarketing undertook in soliciting Upper Deck's business.  These pre-contractual activities, which fall outside the scope of the contract, are irrelevant and cannot form the basis for contractual damages.  See Reformed Church of the Ascension v. Theodore Hooven & Sons, Inc., 764 A.2d 1106, 1109 (Pa. Super. Ct. 2000) (denying recovery for damages absent from express terms of contract since to do so "would, in contravention of contract law, place [plaintiffs] in a much better position than their original expectations.").

Further, Riese v. QVC, Inc., No. 97-40068, 1999 WL 178545 (E.D. Pa. March 30, 1999), which Plaintiff cites in its opposition, cannot save the implied-in-fact claim from summary judgment.  In that case, the plaintiff made full disclosure of an idea for a television show, conduct from which a reasonable jury could determine that plaintiff had provided a beneficial service.  Further, the crux of that case was misappropriation – a claim that presented the factual question of whether the defendant, in producing a television show with a concept similar to plaintiff's idea, benefited from the plaintiff's services.  Id. at *3, *4.  These questions of fact made it appropriate for that court to submit the claims to a jury.  Here, by contrast, it is undisputed that Buzzmarketing's proposals were not performance of its proposed marketing services.  It is also undisputed that Upper Deck did not avail itself of any of Buzzmarketing's alleged services, because

10

it has not used any of the marketing plans that Buzzmarketing prepared. (Mot. Summ. Judg. 18-19.)

## V.   CONCLUSION

In its motion for summary judgment, Upper Deck demonstrated that there was an absence of genuine issues of material fact as to each of the four claims in this action. Buzzmarketing, in attempting to oppose the motion, only addresses the oral and implied-in-fact contract claims. With respect to these claims, it has failed to come forth with any evidence showing a factual dispute. Therefore, summary judgment should be granted.

 

_____

SAMUEL E. COHEN, ESQUIRE
Attorney I.D. No. 78996
Marshall, Dennehey, Warner,
Coleman & Goggin
1845 Walnut Street, 17th Floor
Philadelphia, PA 19103
(215) 575-2587

EDWARD S. ZUSMAN, ESQUIRE
Admitted Pro Hac Vice
(CA Attorney I.D. 154366)
KEVIN K. ENG, ESQUIRE
Admitted Pro Hac Vice
(CA Attorney I.D. 209036)
Markun Zusman & Compton LLP
601 Montgomery Street, Suite 900
San Francisco, CA 94111
(415) 438-4515

Attorneys for Defendant,
The Upper Deck Company, LLC

Date: April 8, 2004